UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; LIBERTY MUTUAL PERSONAL INSURANCE COMPANY; LM GENERAL INSURANCE COMPANY; AMERICAN ECONOMY INSURANCE COMPANY; and SAFECO INSURANCE COMPANY OF ILLINOIS, | C.A. No. _____ |
| Plaintiffs, | |
| v. | **Demand for Jury Trial** |
| INFINITY PHYSICAL THERAPY LLC; ALIGNED CHIROPRACTIC LLC; AHMED ZAKI, P.T.; and KHALED ZAKI, D.C., | |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiffs Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, LM General Insurance Company, American Economy Insurance Company, and Safeco Insurance Company of Illinois (hereinafter collectively referred to as "Liberty Mutual" and/or "plaintiffs") hereby allege as follows.

## I.   <u>INTRODUCTION</u>

1.     This is a case about a physical therapy clinic, a chiropractic clinic, and the owners, managers, agents, and representatives of the same, who engaged in a scheme to defraud Liberty Mutual by submitting and causing to be submitted false and fraudulent records, bills, and invoices through the U.S. Mail and interstate wires seeking to collect payment from Liberty Mutual for purported services that were not actually provided, medically unnecessary, fraudulently billed, and charged at excessive rates pursuant to applicable statutes and regulations, including the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, et seq.

2.     The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in payments from Liberty Mutual to the defendants pursuant to Michigan's No-Fault Act.

3.     All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

4.     By this Complaint, and as detailed in each count set out below, Liberty Mutual brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment.  Liberty Mutual also seeks declaratory relief that no previously-denied and pending insurance claims submitted to it by the defendants are compensable.

## II.   **THE PARTIES**

### A.   **PLAINTIFFS**

5.     Liberty Mutual Fire Insurance Company is a company duly organized and existing under the laws of the State of Wisconsin.

6.     Liberty Mutual Personal Insurance Company is a company duly organized and existing under the laws of the Commonwealth of Massachusetts.

7.     LM General Insurance Company is a company duly organized and existing under the laws of the State of Illinois.

8.     American Economy Insurance Company is a company duly organized and existing under the laws of the State of Indiana.

9.     Safeco Insurance Company of Illinois is a company duly organized and existing under the laws of the State of Illinois

10.     Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, LM General Insurance Company, American Economy Insurance Company, and Safeco Insurance Company of Illinois each have their respective principal places of business in Boston, Massachusetts.

11.     At all times relevant to the allegations contained in this Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

B.   **DEFENDANTS**

1.   **Infinity Physical Therapy LLC**

12.   Defendant Infinity Physical Therapy LLC ("Infinity") is organized under the laws of the State of Michigan.

13.   Infinity's member is defendant Ahmed Zaki, P.T. ("Ahmed Zaki").

14.   Ahmed Zaki is a citizen of the State of Michigan.

15.   At all times, Infinity was operated and conducted by defendants Aligned Chiropractic LLC ("Aligned"), Ahmed Zaki, and Khaled Zaki, D.C. ("Khaled Zaki").

16.   Infinity billed Liberty Mutual for physical therapy services that were not provided, medically unnecessary, fraudulently billed, and charged at excessive rates in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 1.

2.   **Aligned Chiropractic LLC**

17.   Defendant Aligned Chiropractic LLC is organized under the laws of the State of Michigan.

18.   Aligned's member is defendant Khaled Zaki.

19.   Khaled Zaki is a citizen of the State of Michigan.

20.   At all times, Aligned was operated and conducted by defendants Infinity, Khaled Zaki, and Ahmed Zaki.

21.     Aligned billed Liberty Mutual for chiropractic services that were not provided, medically unnecessary, and fraudulently billed in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 2.

### 3.     **Ahmed Zaki**

22.     Defendant Ahmed Zaki is a resident and citizen of the State of Michigan.

23.     At all relevant times, Ahmed Zaki operated and conducted defendants Infinity and Aligned.

### 4.     **Khaled Zaki**

24.     Defendant Khaled Zaki is a resident and citizen of the State of Michigan.

25.     At all relevant times, Khaled operated and conducted defendants Aligned and Infinity.

## III.   **JURISDICTION AND VENUE**

26.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961, et seq., because they arise under the laws of the United States.

27.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

28.     Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

29.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue in this Complaint were carried out within the Eastern District of Michigan.

## IV.   THE DEFENDANTS' FRAUDULENT SCHEME

30.     The defendants used the RICO enterprises discussed herein – Infinity and Aligned – to submit exorbitant charges to Liberty Mutual for purported physical therapy and chiropractic services that were not actually provided, were not medically necessary, were fraudulently billed, and were charged at excessive rates.

31.     The purpose of the scheme was to generate the highest possible amount of charges to Liberty Mutual to abuse the Michigan No-Fault Act.

32.     The defendants are interrelated and utilized Infinity and Aligned to generate bills for medically unnecessary services and to direct patients to each other for excessive, fraudulently billed, and not actually rendered services.

33.     Defendants Ahmed Zaki and Khaled Zaki are brothers who operate Infinity (a physical therapy clinic) and Aligned (a chiropractic clinic) in the same office building, on the same floor, and with shared facilities, including the patient waiting area.

34.    Ahmed Zaki and Khaled Zaki referred patients to the other's clinic for additional medically unnecessary treatment, which is evidenced by the fact that 87% of patients of one of the defendant clinics were also patients of both clinics.

35.    As discussed in detail *infra*, Infinity and Aligned often billed Liberty Mutual for redundant alleged treatment to the same patients on the same dates.

36.    Many patients for whom both Infinity and Aligned billed for services on the same date would have been subjected to treatment at the absurd rate of several hours per day on multiple days per week, sometimes for more than a full calendar year, if the treatment actually occurred as billed to Liberty Mutual (which it did not, as detailed herein).

37.    To the extent patients actually received treatment for the durations of time the defendants billed (which they did not), subjecting allegedly injured patients to multiple hours of active physical therapy and chiropractic treatment so often could never be medically necessary and would be nearly impossible for many patients to endure.

38.    Upon information and belief, Infinity and Aligned obtained patients who claim to have been involved in motor vehicle accidents through referrals resulting from illegal solicitation.

39.    Once patients were steered to Infinity or Aligned, they were set on a course of excessive billing for physical therapy and chiropractic treatment that

continued for several months to more than a year with little to no improvement in their conditions.

40.    Defendant Ahmed Zaki also has a significant disciplinary history, including being fined $1,500 by the Michigan Board of Physical Therapy on July 12, 2023 for violating sections 16221(a), (b)(vi), and (b)(xi) of the Public Health Code, Mich. Comp. Laws § 333.1101, et seq., after he was charged with recording sexual acts with a person without their permission.

41.    This disciplinary history is significant because it is further evidence that patients, who would be unlikely to voluntarily choose to treat with a physical therapist with a history of such violations amongst all of the other options available, were steered to the defendants to generate high amounts of charges to insurers.

42.    As a result of their familial relationship and shared control, the defendants had a significant financial motivation to bill Liberty Mutual for as many services as possible for as long as possible regardless of medical need and applicable standards of care.

43.    The defendants' bills and associated records were sent to Liberty Mutual through the U.S. Mail and interstate wires, and Liberty Mutual relied on the mailings and faxes sent by the defendants in adjusting and paying insurance claims.

## V.   **BILLING FOR SERVICES NOT RENDERED**

44.    The defendants regularly submitted bills to Liberty Mutual seeking payment for treatment and services that were never rendered to patients at issue herein.

45.    The defendants' pervasive pattern of mailing and faxing demands for payment for services that were not rendered is indicative of their goal to submit as many bills for payment as possible regardless of whether the treatment was actually rendered and whether it was medically necessary (discussed in detail *infra*).

46.    All of the bills submitted by the defendants to Liberty Mutual through the U.S. Mail and interstate wires seeking payment for treatment that never occurred are fraudulent.

47.    Liberty Mutual is not required to pay the defendants for services that were never provided to patients at issue in this Complaint and is entitled to recover any payments tendered to the defendants as a result of their fraudulent billing for services not rendered.

48.    Infinity routinely billed Liberty Mutual for massage therapy it did not provide to patients.

49.    Ahmed Zaki admitted in testimony that he does not provide massage therapy and that Infinity does not have a massage therapist on its staff:

```
3   A   No:  I don't do massage.
4   Q   You don't have any assistants or techs provide
5       that service to your clients?
6   A   No.
```

50.    Nevertheless, Infinity billed Liberty Mutual for massage therapy to patients at issue herein, including representative example B.B. (Claim No. 041367421)[1] on twenty-one (21) dates using Current Procedural Terminology ("CPT")[2] code 97124 between March 2, 2020 and April 22, 2020.

51.    Purported massage therapy billed using CPT code 97124 requires that a qualified healthcare professional uses hands-on direct one-on-one contact with the patient.

52.    According to B.B.'s testimony, the "massage" billed by Infinity involved sitting in a chair that massaged her back, which is not sufficient to bill for 97124.

---

[1] To protect the confidentiality of the patients at issue herein, Liberty Mutual refers to them by initials and Liberty Mutual claim number.  The defendants are aware of the Liberty Mutual claim number, as the defendants included the claim number on the bills they submitted to Liberty Mutual.

[2] CPT codes are published annually by the American Medical Association ("AMA") to facilitate the efficient processing of health care charges by insurance carriers and other private and governmental health care payors.  Providers who are subject to the Health Insurance Portability and Accountability Act ("HIPAA") are required to use CPT codes.

53.    As another representative example, Infinity billed for massage therapy it did not provide to L.B. (Claim No. 041367421) on four (4) dates between November 15, 2019 and April 22, 2020.

54.    Several of the alleged services billed by Infinity required skilled, one-on-one attention from a qualified therapist, including bills for therapeutic exercises and neuromuscular reeducation, which were among the most commonly billed services by Infinity.  *See* Exhibit 1.

55.    In order to properly bill for one-on-one therapeutic exercises, the documentation must clearly indicate the need for the procedure and have evidence to support one-on-one care requiring the skills of a therapist.

56.    Many of the purported exercises billed by Infinity were repetitive and did not require one-on-one treatment at each appointment.

57.    For example, patients do not need to be re-taught how to use a treadmill or an exercise bike at every visit or require a therapist to give constant attention to these activities, making it inappropriate to represent (and bill for) these types of exercises as skilled, one-on-one therapy.

58.    Infinity nevertheless included time patients spent doing these unskilled exercises in its calculation of time spent performing the one-on-one therapy for which it billed Liberty Mutual.

59.     As one representative example, Infinity billed Liberty Mutual for either two (2) or three (3) units of one-on-one therapeutic exercises on 128 dates to L.B. (Claim No. 041367421) from November 15, 2019 to October 30, 2020 that nearly always included at least eight (8) minutes that L.B. allegedly used a treadmill or exercise bike.

60.     Infinity's therapy records do not even specify whether L.B. used a treadmill or an exercise bike on any specific day and certainly do not document the medical need for these exercises, much less the medical need for constant one-on-one supervision or that constant one-on-one supervision was in fact provided 128 times.

61.     Independent of the failure to document treatment that was repeatedly billed, there clearly was no valid reason for a physical therapist to repeatedly provide constant attendance to any individual using either a treadmill or an exercise bike, and such constant one-on-one supervision was not in fact provided.

62.     Infinity billed Liberty Mutual more than $50,000 for these unskilled exercises to L.B. alone.

63.     In another example, Infinity billed Liberty Mutual three (3) units of one-on-one therapeutic exercises on 69 dates to M.T. (Claim No. 044593827) from February 10, 2021 to September 16, 2021 and always purported to include ten (10) minutes of constant one-on-one supervision of use of a stationary bike.

64.    Even if M.T. could benefit from the use of an exercise bike at every treatment session, which was never documented or explained, there was no valid service that a therapist could have constantly performed on a one-on-one basis over this number of visits and period of time.

65.    The defendants also routinely billed for more units of time-based one-on-one treatment modalities than were actually provided (if any were provided at all).

66.    Each unit billed for a timed code represents fifteen (15) minutes of treatment, of which at least eight (8) minutes must be actually performed in order to submit a bill for that timed code.

67.    For example, one (1) unit of a timed-based code may be billed for treatment lasting between eight (8) and twenty-two (22) minutes (assuming all other requirements are met, including that treatment was done with constant supervision and on a one-on-one basis) and a second unit may be billed only after twenty-three (23) minutes of purported treatment is completed and so forth as illustrated by the chart below:

| Units | Minutes of Treatment |
|-------|---------------------|
| 1 | 8 - 22 |
| 2 | 23 - 37 |
| 3 | 38 - 52 |
| 4 | 53 - 67 |
| 5 | 68 - 82 |

68.     Aligned and Infinity consistently ignored this rule and billed for multiple units of timed services while failing to record the requisite amount of time to support their bills.

69.     For example, Aligned billed for two (2) units of therapeutic activities to M.T. (Claim No. 044593827) on September 1, 2021 while documenting only eight (8) minutes of lumbar reaches and eight (8) minutes of shoulder extensions totaling sixteen (16) minutes.

70.     Sixteen (16) minutes is not enough time to bill for more than a single unit of therapeutic exercises (if any was done at all).

71.     Aligned repeated the same billing for therapeutic activities not rendered with respect to M.T. on September 3, 2021, documenting only a total of eighteen (18) minutes of therapeutic activities yet improperly billing for two (2) units.

72.     Similarly, Aligned billed Liberty Mutual for two (2) units of therapeutic activities to L.B. (Claim No. 041367421) on April 27, 2020 while documenting only nineteen (19) minutes of activity, which is insufficient to support two (2) units.

73.     Aligned repeated its billing for therapeutic activities not performed to L.B. on ten (10) of its next eleven (11) dates of purported service by billing for two (2) units each of therapeutic activities despite recording less than twenty-three (23) minutes of this modality each time.

74.     Aligned similarly billed for therapeutic activities not rendered to O.T. (Claim No. 043905733) on forty-three (43) out of forty-eight (48) dates between November 3, 2020 and July 21, 2021 without documenting at least twenty-three (23) minutes service.

75.     Infinity also billed for three (3) units of therapeutic exercises on nearly 80% of its bills to Liberty Mutual and claimed to perform exactly thirty-eight (38) minutes of treatment virtually every time. *See* Exhibit 1.

76.     It is highly unlikely that Infinity applied exactly thirty-eight (38) minutes of therapeutic exercises to nearly every patient during almost 80% of the purported dates of service billed.

77.     Moreover, thirty-eight (38) minutes is precisely the minimum amount of time required for Infinity to bill for three (3) units, confirming that the defendants were aware of the AMA's timing rule and exploited it for their financial gain.

78.     Infinity's treatment notes purporting to document these exactly thirty-eight (38) minutes therapeutic exercises were inconsistent and confirm that the services were not actually performed for that exact amount of time (if performed at all).

79.     Infinity purported to list each therapeutic exercise allegedly performed on each patient in its treatment notes, but in different sections of the same treatment notes, Infinity recorded different exercises allegedly performed.

80. For example, Infinity claimed to perform thirty-eight (38) minutes of therapeutic exercises to M.T. (Claim No. 044593827) on March 1, 2021.

81. Infinity claimed to perform fifteen (15) separate exercises on that date but only recorded time for two (2) of them.

82. In a separate section of the treatment record for the same date, Infinity noted that M.T. performed only nine (9) exercises, confirming that the actual treatment (if any) provided to M.T. did not support the amount and number of units Infinity billed to Liberty Mutual.

83. Infinity and Aligned also routinely billed for purported neuromuscular reeducation that was unsupported and not provided.

84. Neuromuscular reeducation is a treatment that is intended to be used for improving balance and coordination of the lower extremities, typically used when there are central nervous system dysfunctions after an event such as a stroke.

85. Neuromuscular reeducation is typically not appropriate for patients with minor orthopedic injuries (as opposed to nervous system injuries), particularly upper extremity injuries.

86. Nevertheless, Infinity and Aligned routinely billed for alleged neuromuscular reeducation for patients without any lower extremity injuries or limitations.

16

87.    For example, Infinity billed M.T. (Claim No. 044593827) for neuromuscular reeducation on 68 dates while the only injuries alleged by M.T. were to her neck, upper back, and upper extremities.

88.    Similarly, C.S. (Claim No. 049404491) reported only symptoms related to her left shoulder.

89.    Nevertheless, Infinity billed for neuromuscular reeducation on 112 dates of purported service to C.S. purportedly to her left upper extremity only, which is not appropriately categorized as neuromuscular reeducation.

90.    Infinity billed for purported neuromuscular reeducation it did not perform to L.B. (Claim No. 041367421) on 128 dates of purported service and Aligned billed for neuromuscular reeducation it did not perform to L.B. on five (5) dates of purported service.

91.    L.B. never suffered a stroke or any other injury that could result in central nervous system dysfunction and whatever treatment was provided (if any at all) was not neuromuscular reeducation.

92.    Liberty Mutual is not required to pay the defendants for physical therapy and chiropractic treatment they did not provide to patients and it is entitled to recover payments tendered to the defendants as a result of their fraudulent billing.

## VI.   FALSIFIED AND FABRICATED RECORDS

93.    The defendants routinely submitted fabricated medical records to conceal their fraud and create the false appearance of significant injury in order to support their charges for unnecessary services.

94.    Patients often allegedly presented to the defendants with reports of symptoms limited to specific regions and the defendants falsely expanded those patients' diagnoses to include multiple regions to create additional billing to Liberty Mutual.

95.    For example, C.M. (Claim No. 049278144) was allegedly involved in a motor vehicle accident on April 18, 2022.

96.    When C.M. was examined in the emergency room on the date of the alleged accident, he complained only of pain to his left knee and left wrist and categorically denied back pain, chest pain, dizziness, headaches, and neck pain.

97.    Two (2) weeks later, Aligned billed for an initial evaluation of C.M. on May 2, 2022 and falsely claimed that "at the time of the accident he felt discomfort at the back of his head, neck and right low back, [left] shoulder and arm, and supplemental complaints of dizziness, disbelief and chest pain," which clearly contradicts what C.M. actually reported at the time of the alleged accident.

98.    Aligned also claimed that C.M. suffered a "cervical and lumbar spine injury with nerve root compression . . . ."

99.    A diagnosis of nerve root compression would require actual diagnostic testing and examination (e.g., MRIs or electrodiagnostic testing) that had not been performed to C.M. by any provider at the time of the evaluation, confirming Aligned exaggerated and fabricated the diagnoses to create the appearance of necessity for the excessive course of treatment recommended.

100.    Further, Aligned continued to misrepresent and exaggerate the nature and severity of C.M.'s purported injuries throughout his alleged course of treatment.

101.    For    instance,    on    June    1,    2022    Aligned    noted    spinal restriction/subluxation to several cervical vertebrae, including C2, C5, and C6, despite an x-ray to C.M.'s cervical spine just a few weeks earlier confirming "no evidence of fracture or subluxation."

102.    Aligned used these fabricated and exaggerated diagnoses and claims to falsely support billing for chiropractic treatment to C.M.'s entire spine for the next two (2) months.

103.    Infinity also began billing for physical therapy to C.M.'s entire spine on May 2, 2022 and included "[p]ain in thoracic spine" and "[o]ther low back pain" in its diagnoses for each purported date of service that followed.

104.    As further confirmation of the defendants' fabrication of C.M.'s symptoms and diagnoses, just two (2) days after C.M.'s initial evaluation at Aligned,

C.M. allegedly presented to an orthopedist on May 4, 2022 for a comprehensive examination that did not mention any pain in C.M.'s lower back or thoracic spine.

105.   In another example, M.T. (Claim No. 044593827) was allegedly involved in a motor vehicle accident on January 24, 2021.

106.   An MRI of M.T.'s lumbar spine dated June 1, 2021 was unremarkable for any acute injury to the lumbar spine.

107.   Nevertheless, Infinity fabricated a diagnosis of "[o]ther intervertabral disc displacement, lumbar region" despite the recent imaging to the contrary to falsely support an additional three (3) months of billing by both Infinity and Aligned to M.T.'s entire spine.

108.   Liberty Mutual is not required to pay the defendants for treatment billed that was based upon the defendants' fabricated findings and false treatment records, and is entitled to recover any payments tendered to the defendants as a result of their fraudulent billing.

## VII.   **UNREASONABLE       AND       UNNECESSARY       FRAUDULENT TREATMENT**

109.   The defendants' willingness to bill for services that were never rendered demonstrates their willingness to also bill for treatment that was unreasonable and unnecessary.

110.   The defendants' goal was to bill for as much treatment as possible, regardless of whether such treatment was reasonably necessary to patients' care,

recovery, rehabilitation, and/or arose out of an alleged motor vehicle accident, in order to generate bills to Liberty Mutual.

111.   The defendants' purported treatment also violated standards of care, as services were not indicated, redundant, excessive, and repeated without any benefit to patients.

112.   The full extent and pattern of the defendants' misrepresentations regarding the lawfulness and necessity of the treatment they billed was not known to Liberty Mutual until it undertook the full investigation that culminated in the filing of this action.

113.   The unnecessary treatment billed by the defendants, discussed more fully below, includes the treatment and patients set out in the charts annexed hereto at Exhibits 1 and 2.

114.   All of the claims submitted by the defendants to Liberty Mutual through the U.S. Mail and interstate wires seeking payment for unnecessary, excessive, unlawful, and unreasonable treatment are fraudulent.

115.   Liberty Mutual is not required to pay the defendants for treatment that was medically unnecessary, and it is entitled to the return of money paid as a result of the defendants' fraud.

116.   None of the facts set out in this section were known to Liberty Mutual until it undertook its investigation that resulted in the commencement of this action,

and are not evident within the four corners of the medical records and bills submitted to Liberty Mutual by the defendants.

### A.    THE DEFENDANTS' PREDETERMINED TREATMENT PROTOCOL

117. To maximize their financial gain, the defendants adhered to a predetermined protocol of unnecessary, indiscriminate, and excessive evaluation and treatment.

118. The defendants used a strikingly similar pattern of alleged diagnoses and treatment across all patients.

119. Each patient was assessed as having extremely similar reports of complaints and purported objective findings regardless of the type of injury claimed and regardless of each patient's age, sex, and pre-accident condition and history.

120. For example, B.B. (Claim No. 041367421) and L.B. (Claim No. 041367421) are a mother and son who were allegedly involved in a low-speed motor vehicle accident in which the patients' vehicle reversed into a pole.

121. B.B. primarily complained of pain to her neck, middle, and upper back while L.B. primarily complained of pain to his lower back only.

122. Despite B.B.'s primary complaints to the contrary, Infinity consistently included low back pain in B.B.'s diagnoses along with thoracic pain, cervicalgia, muscle spasms in her back, and headaches.

123.   Although L.B.'s primary complaints were to his lower back only, Infinity assigned L.B. the same diagnoses as B.B., routinely including thoracic pain, cervicalgia, muscle spasms in his back, and headaches.

124.   Despite vastly different complaints, the defendants then billed the exact same treatment to both B.B. and L.B. consisting of neuromuscular reeducation, ultrasound, therapeutic exercises, electric stimulation, and hot or cold packs (billed by Infinity) and chiropractic manipulation to 3-4 regions, therapeutic activities, manual therapy, mechanical traction, and message therapy (billed by Aligned).

125.   The defendants consistently billed the same treatment to both patients detailed above despite having different injuries and the fact that B.B. was a 69-year-old woman and L.B. was a thirty (30) year old man.

126.   Once patients were steered to Infinity and Aligned for physical therapy and chiropractic treatment, each defendant billed Liberty Mutual between four (4) and six (6) modalities per date for each patient.

127.   To further maximize the bills, Infinity and Aligned referred a majority of patients between each other as evidenced by a 87% correlation of common patients.  *See* Exhibits 1 and 2.

128.   The purported treatment billed by Infinity and Aligned was remarkably similar, as nearly every patient of the defendant clinics was prescribed the same

course of treatment regardless of their age, history, co-morbidities, or the nature of their injury.

129. For instance, Infinity billed Liberty Mutual for electrical stimulation, therapeutic exercises, and neuromuscular reeducation for 100% of its patients without regard to the unique circumstances of each patient. *See* Exhibit 1.

130. Aligned billed Liberty Mutual for mechanical traction, manual therapy, and chiropractic manipulation to three (3) to four (4) regions, for 100% of its patients, and therapeutic activities to 87% of patients without regard to the unique circumstances of each patient, including patient age or medical history. *See* Exhibit 2.

131. Most of the patients for whom the defendants billed treatment were allegedly involved in minor automobile accidents and it is extremely unlikely that every patient of Aligned actually injured every region of their spines necessitating chiropractic manipulation to three (3) to four (4) regions.

132. Indeed, and as detailed above, patients of the defendants often presented with a complaint of alleged pain to a single spinal region and the defendants falsely expanded their diagnoses to apply to multiple regions.

133. For example, as discussed *supra*, L.B. (Claim No. 041367421) initially presented with low back pain only and the defendants falsely expanded his diagnoses

to include thoracic and cervical pain to support billing for additional chiropractic manipulation that was medically unnecessary.

134.   Infinity and Aligned both consistently billed the exact same treatment plans to patients who had vastly different ages, medical histories and co-morbidities, and alleged injuries.

135.   For example, patient B.B. (Claim No. 047734516) was a 73-year-old woman allegedly involved in a motor vehicle accident on November 21, 2021.

136.   Infinity's alleged treatment of B.B. consisted of ultrasound, electrical stimulation, therapeutic exercises, and neuromuscular reeducation billed for virtually every purported date of service between November 29, 2021 and February 23, 2022.

137.   Aligned's alleged treatment of B.B. during that period consisted of manual therapy (1 region), chiropractic manipulation (3-4 regions), mechanical traction, and therapeutic activities billed for nearly every purported visit.

138.   In addition to her advanced age, B.B. has a substantial medical history including type II diabetes, hypertension, gout, gall bladder removal, and multiple orthopedic procedures and the injuries for which the defendants purportedly treated her included lower back and hip pain.

139.   By contrast, patient C.M. (Claim No. 049278144) was a thirty (30) year old man allegedly involved in a motor vehicle accident on April 18, 2022.

140.   C.M. purportedly injured his neck, middle to upper back, and left shoulder and had no significant medical history or co-morbidities.

141.   Despite a forty-three (43) year age difference and entirely different medical histories, the defendants each billed the exact same treatment plan with Infinity consistently billing Liberty Mutual for ultrasound, electrical stimulation, therapeutic exercises, and neuromuscular reeducation for C.M. and Aligned consistently billing for manual therapy (1 region), chiropractic manipulation (3-4 regions), mechanical traction, and therapeutic activities.

142.   Moreover, as discussed *supra*, C.M. never presented with an injury to his lower back and billing for treatment to it was based upon the defendants' fabricated and falsified records, such that it was never medically necessary for Aligned to bill for chiropractic manipulation to 3-4 regions at all.

143.   Infinity and Aligned also billed the same exact modalities to the same patients on the same dates of service, which could never be medically necessary.

144.   For example, Infinity and Aligned each billed Liberty Mutual for neuromuscular reeducation to patient L.B. (Claim No. 041367421) on August 10, 2020, August 14, 2020, and August 17, 2020.

145.   Similarly, Infinity and Aligned each billed Liberty Mutual for massage therapy on the same dates of service to patient B.B. (Claim No. 041367421) on eighteen (18) purported dates between Mach 6, 2020 and April 22, 2020.

146.    Liberty Mutual is not required to pay the defendants for treatment based on a predetermined treatment protocol that was not patient-specific, and therefore medically unnecessary, and it is entitled to the return of money paid as a result of the defendants' fraud.

### B.    MEDICALLY UNNECESSARY AND EXCESSIVE PHYSICAL THERAPY AND CHIROPRACTIC TREATMENT

147.    As set out above, the vast majority of patients for whom the defendants billed Liberty Mutual were referred for duplicative physical therapy at Infinity and chiropractic treatment at Aligned.

148.    The physical therapy and chiropractic services prescribed and billed by the defendants were not designed or intended to treat patients' actual injuries, but rather were used as a means to generate billing.

149.    Valid physical therapy treatment requires the services be objectively indicated and cannot be based on a patient's subjective complaints of pain alone.

150.    Physical therapy and chiropractic treatment that is billed for every patient automatically, instead of based on objective indications specific to the particular patient, is not medically necessary.

151.    In addition to billing for both physical therapy and chiropractic treatment for almost every patient, the defendants billed these treatments for excessive amounts of time and continued to do so even when the patients received no benefit from the physical therapy or chiropractic treatment.

152.   Indeed, purported treatment was often for such long durations that at least one patient of the defendants, B.B. (Claim No. 041367421), testified that he was concerned the defendants were scamming him:

```
22      Q.   And what was the explanation -- or what was the
23           things that you didn't like at first?  What made
24           you think -- why were you feeling like you were
25           being scammed?

1       A.   Oh, why they were having us come three times a
2            week and why they were having us come for so
3            long.
```

153.   Patients should rarely undergo physical therapy for more than four (4) to six (6) weeks, as after such time the physical therapy will have reached its maximum benefit and the patient should either cease in-office physical therapy or be recommended for a different type of treatment.

154.   When a patient is no longer making objective progress in physical therapy, the treatment plan must be changed or the patient discharged.

155.   Contrary to these guidelines, Infinity billed Liberty Mutual for physical therapy that often continued for many months without ever substantially altering patients' treatment.

156.   Moreover, according to guidelines published by the American College of Occupational and Environmental Medicine ("ACOEM") and chiropractic experts

who interpret the same, most patients with severe back pain may receive twelve (12)

chiropractic visits over six (6) to eight (8) weeks, "as long as functional improvement

(and not minor improvements in pain ratings) and progression away from passive

modalities to a more active . . . and self-directed activity program are documented

when re-evaluated after 3 to 6 visits."  *See*  https://www.michigan.gov/difs/-

/media/Project/Websites/difs/ORRA/UR_Orders/23-14/23-

1435.pdf?rev=d07193b0d206477abbe0cc0330342cb4  (last accessed April 23,

2024).

157.   The Michigan Department of Health and Human Services ("MDHHS")

deems more than eighteen (18) chiropractic visits per year not medically necessary.

*See*                                       https://www.mdch.state.mi.us/dch-

medicaid/manuals/MedicaidProviderManual.pdf (last accessed April 23, 2024)..

158.   Aligned routinely billed between forty (40) and 90 chiropractic visits

per patient, which far exceeded these standards of care.  *See* Exhibit 2.

159.   The vast majority of Infinity and Aligned patients were allegedly

treated for at least six (6) months and in some instances for more than a full calendar

year.

160.   Despite such unreasonably lengthy periods of purported treatment,

Infinity did not document how such treatment affected the patient's condition, if at

all.

161.   Rather, every Infinity treatment record includes the following boilerplate statement concerning the patient's treatment:

**Plan**
**Instructions:** Progressing Patient Next Visit

162.   Aligned's treatment records included only check-box sections directing the provider to select the status of each patient's treatment efficacy, which was nearly always checked as "unchanged" when the provider bothered to even complete it, as many were left blank:

**STATUS**
☐ Unchanged
☐ Regressing
☐ Improving
☐ Approaching plateau
☐ Achieved goals

163.   These concurrent courses of therapy – that included excessive charges for purported one-on-one treatments that were not actually done, as detailed above – were almost never altered or discontinued.

164.   To that end, Infinity and Aligned failed to adequately re-evaluate patients to determine whether the course of their excessive treatment was even efficacious.

165.   For example, Infinity billed for six (6) months of physical therapy treatment to patient C.M. (Claim No. 049278144) and in that time only billed for two (2) re-evaluations.

30

166.   None of Infinity's evaluation reports for C.M. or any of the treatment records in between those evaluations included any pain scores, making it impossible to assess any improvement (or lack thereof).

167.   Further, Infinity's treatment records routinely included treatment "goals" that were nonsensical, further confirming that continuing treatment was pointless and designed only to generate billing.

168.   For example, on December 16, 2019, Infinity allegedly performed muscle strength testing on L.B. (Claim No. 041369421) the results of which were 4-/5.

169.   Remarkably, Infinity included in L.B.'s treatment goals to improve strength to 4-/5, which L.B. already exhibited.

170.   Despite the fact that L.B. already exhibited full strength as described above on December 16, 2019, Infinity billed another ten (10) months of treatment and included the same treatment goals detailed above in every treatment record.

171.   In some instances, patients never even underwent an initial evaluation to determine the appropriateness of any treatment and were not evaluated until several months into their purported treatment, confirming the treatment plans were predetermined and unnecessary.

172.   For example, Infinity billed Liberty Mutual for three (3) to four (4) modalities per day on forty-six (46) dates of purported service over almost five (5)

months beginning on November 15, 2019 to patient B.B. (Claim No. 041367421) before billing for its first evaluation on April 1, 2020.

173.   Over the next six (6) additional months of purported treatment billed by Infinity for B.B. following that alleged evaluation, Infinity billed for physical therapy "re-evaluations" to B.B. five (5) times, but B.B.'s treatment plan was never altered to reflect patient improvement or deterioration, further confirming the treatment was designed only to maximize billing to Liberty Mutual.

174.   Similarly, Aligned billed five (5) chiropractic modalities per day to B.B. over 89 dates of purported service to B.B. during that same period of time between March 6, 2020 and December 14, 2020 and only once allegedly performed a chiropractic evaluation, on August 21, 2020.

175.   Aligned did not alter B.B.'s treatment at all during that lengthy period of time.

176.   Infinity's and Aligned's concurrent treatment to nearly every patient was also purportedly administered for entirely unreasonable and excessive lengths of time on each purported date of service such that it is highly unlikely the treatment was performed as the defendants billed.

177.   Many of the modalities billed by the defendants were for timed treatment, which requires the length of time each of these modalities was actually

performed be recorded in the treatment record to support the number of units billed for each.

178.   As detailed throughout this Complaint, both Infinity and Aligned regularly billed for treatment to the same patient on the same purported date of service.

179.   The length of time recorded for each concurrent patient by Infinity and Aligned amounted to grossly excessive treatment time, which in some cases would have been impossible considering the patients' ages, co-morbidities, and purported injuries.

180.   For example, Infinity recorded a total of 92 minutes of treatment for patient B.B. (Claim No. 047734516) on December 15, 2021.

181.   On the same date of service, Aligned recorded an additional forty-six (46) minutes of timed modalities to patient B.B, plus untimed additional treatment including chiropractic manipulation.

182.   This amounts to a total of nearly two and a half hours of purported timed treatment to one (1) patient in a single day (excluding time in waiting rooms, transitioning between modalities, using the restroom, taking a break, etc.), which is extremely unlikely for a 73-year-old patient with multiple co-morbidities and allegedly serious orthopedic injuries.

183.   This grueling alleged treatment schedule was repeated by Infinity and Aligned with respect to B.B. several days per week for several months.

184.   Infinity and Aligned billed the same or similar lengths of treatment time concurrently on the same day to B.B. on forty-two (42) dates of purported service over more than five (5) months.

185.   Infinity also billed Liberty Mutual for medically unnecessary use of a vasopneumatic device using CPT code 97016.

186.   Billing using CPT code 97016 requires that documentation demonstrates significant edema that interferes with the patient's functional abilities.

187.   Despite billing for use of vasopneumatic device on twenty-nine (29) dates of purported service to patient C.S. (Claim No. 049404491), Infinity did not once document that C.S. experienced any edema or swelling of any kind.

188.   Similarly, Infinity billed for unnecessary use of a vasopneumatic device to M.T. (Claim No. 044593827) on six (6) dates of services between August 27, 2021 and September 10, 2021 when M.T. experienced no documented edema or swelling.

189.   Liberty Mutual is not required to pay the defendants for medically unnecessary and excessive physical therapy and chiropractic treatment billed concurrently for each patient for several months with no change in patients'

conditions and no alteration of treatment plans and it is entitled to the return of money paid as a result of the defendants' fraud.

## VIII.  FRAUDULENT BILLING PRACTICES

190.   The medical records, bills, and invoices submitted to Liberty Mutual by the defendants contained standardized billing codes.

191.   Providers like the defendants have a responsibility to select and submit the billing code that accurately and truthfully identifies the services performed and the complexity involved in rendering those services.

192.   The defendants failed to meet this responsibility and instead submitted bills with unreasonable charges to Liberty Mutual for medically unnecessary, unlawful, and excessive services and used fraudulent billing practices, as discussed *infra*.

193.   All of the medical records, bills, and invoices submitted to Liberty Mutual by the defendants contained CPT and Healthcare Common Procedure Coding System ("HCPCS") codes.

194.   By utilizing CPT and HCPCS codes to submit billing to Liberty Mutual, the defendants represented that the services they billed for corresponded to and were accurately described by the published descriptions for the CPT and HCPCS codes they chose.

195.   The defendants never communicated to Liberty Mutual that they intended that the CPT and HCPCS codes they used to submit bills have any meanings other than those ascribed by the AMA and the Centers for Medicare and Medicaid Services, which publish CPT and HCPCS codes, respectively.

196.   Liberty Mutual reasonably relied on the representations and published definitions assigned to the CPT and HCPCS codes billed by the defendants.

197.   The bills submitted to Liberty Mutual by the defendants were submitted on Health Insurance Claim Forms (HICF) approved by the National Uniform Claim Committee (NUCC) and referenced in the NUCC Instruction Manual.

198.   The back of all HICF forms contains the following language in bold font: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

199.   Despite the warning on the back of the HICF forms, the defendants included false, incomplete, and misleading information in the bills and medical records submitted to Liberty Mutual through the U.S. Mail and interstate wires.

200.   The defendants knowingly submitted false, incomplete, and misleading bills to Liberty Mutual, including submitting bills that included inaccurate and inappropriate CPT and HCPCS codes for the services they allegedly provided, with

the intention that Liberty Mutual rely on those bills in order to make payments to the defendants to which they knew they were not entitled.

201.   Liberty Mutual relied on the bills submitted by the defendants to its detriment and was induced to make payments to the defendants to which they were not entitled as a result of the defendants' fraudulent billing practices.

202.   One way the defendants sought to and did obtain payments from Liberty Mutual to which they knew they were not entitled was by submitting double bills for the same alleged procedures, supplies, and services through the use of separate CPT codes and charges for individual components of a procedure that also were included in another billing code also billed for the same date of service.

203.   As detailed above, a majority of physical therapy patients of Infinity also had bills submitted by Aligned for purported chiropractic services.

204.   Together, the predetermined course of care implemented by Infinity and Aligned, which was done simultaneously often to the same patients on the same dates at the same location, involved chiropractic manipulation treatment, manual therapy, and massage therapy, often with each of these treatments billed on the same date.

205.   Coding guidelines and regulations prohibit manual therapy (CPT code 97140) and massage therapy (CPT code 97124) from being billed relative to the same patient on the same date.

206.   Both Infinity and Aligned routinely billed for both manual therapy and massage therapy to the same patient on the same dates, and these bills were unquestionably fraudulently double billed.  *See* Exhibits 1 and 2.

207.   Coding guidelines and regulations also prohibit chiropractic manipulation treatment from being billed at the same time as both manual therapy and massage therapy.

208.   Nevertheless, Aligned Chiropractic often billed for manual therapy and multiple chiropractic manipulations for the same patient on the same date of service.

209.   Manual therapy may only be billed with chiropractic manipulation if the techniques are performed on separate body regions from the manipulations.

210.   Aligned Chiropractic routinely violated this requirement by billing for chiropractic manipulation to three (3) to four (4) regions and also billing for manual therapy during the same purported visit without specifying regions where manual therapy was applied that were different from those manipulated.  *See* Exhibit 2.

211.   Aligned Chiropractic attempted to hide this practice by using CPT code modifier 59 with its billing for manual therapy.

212.   This modifier falsely signals that the application of manual therapy was to a different body part when it was not.

213. Aligned Chiropractic also routinely and improperly billed for both massage therapy and chiropractic manipulation on the same dates of service as chiropractic manipulation to three (3) to four (4) regions. Id.

214. Massage therapy is subsumed into chiropractic manipulation when billed on the same date of service to the same patient unless the massage therapy was administered to a different body region, which the defendants did not do.

215. Infinity routinely billed for the application of hot or cold packs to almost all of its patients at the same time as it also billed for electric stimulation. *See* Exhibit 1.

216. Hot or cold packs allegedly placed on patients are considered part of the primary service for electric stimulation and are not separately billable.

217. Liberty Mutual is not required to pay for purported treatment that is double billed and is entitled to restitution of the money it paid to the defendants as a result of their fraudulent double billing.

## IX. EXCESSIVE AND UNREASONABLE CHARGES

218. Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

219.    The defendants routinely billed Liberty Mutual at rates that were unreasonable and had no relation to the services allegedly performed.

220.    In each such case, including those described in this section, Liberty Mutual was harmed when it was induced to pay the unreasonable amounts billed by the defendants.

221.    Liberty Mutual also was harmed even when it did not pay the unreasonable and excessive amounts charged by the defendants, because it was nevertheless obligated to investigate and adjust each claim, thereby incurring costs.

222.    As an example of Infinity's excessive charges, Infinity routinely billed $400 for each physical therapy re-evaluation.

223.    By comparison, physical therapy providers nationwide bill (not received as reimbursement from) Medicare an average of $103 for physical therapy re-evaluations.

224.    Infinity also charged Liberty Mutual $500 for each initial physical therapy evaluation while physical therapy providers nationally billed Medicare an average of $175 for the same evaluations.

225.    Billing Liberty Mutual nearly three (3) to four (4) times the average charge for these services is per se unreasonable.

226.   Similarly, Infinity charged Liberty Mutual $150 per unit of therapeutic exercises while physical therapy providers nationwide billed Medicare an average of $65 per unit.

227.   The egregious over charging of Liberty Mutual by Infinity was further compounded by the fact that Infinity almost always charged Liberty Mutual for three (3) units of therapeutic exercise for every patient on every date of service totaling $450 per date of purported service.

228.   To the extent Infinity provided this service at all, charging for three (3) units was not necessary considering Aligned nearly always billed for therapeutic activities on the same dates of service to the same patients.

229.   The amounts of Infinity's charges had no relationship to the cost or value of the services allegedly provided, and they were selected only to maximize the amount of charges to Liberty Mutual.

230.   As Infinity and Aligned routinely billed Liberty Mutual on the same dates for the same patients, they combined to bill for as many as eight (8) treatment modalities per day for each patient, which often totaled nearly $1,600 per patient on each day.

231.   Indeed, Infinity and Aligned combined to bill for an average of more than $90,000 per patient over the course of patients' purported treatment, which far

exceeds a reasonable amount for what should be relatively inexpensive conservative treatment measures.

232.   Unreasonable charges are not compensable under the No-Fault Act and Liberty Mutual has no obligation to pay the defendants the outrageous amounts billed.

## X.   MISREPRESENTATIONS MADE BY THE DEFENDANTS AND RELIED ON BY LIBERTY MUTUAL

### A.   MISREPRESENTATIONS BY THE DEFENDANTS

233.   To induce Liberty Mutual to pay promptly their fraudulent charges, the defendants submitted to Liberty Mutual false documentation that materially misrepresented that the services they billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that the services billed were actually rendered.

234.   Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a).

235.   Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for goods or services that are "lawfully render[ed]."  Mich. Comp. Laws § 500.3157(1).

236.    Thus, every time the defendants submitted bills and medical records to Liberty Mutual supporting their claims for No-Fault benefits, the defendants necessarily warranted that such bills and records related to lawfully and actually rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

237.    There are no less than six (6) separate reasons why the defendants' alleged treatment was not in fact performed, was not medically necessary, and was fraudulently billed to Liberty Mutual.  The defendants:

a.    Billed for physical therapy and chiropractic treatment that was not actually rendered;

b.    Falsified treatment records and fabricated patients' diagnoses to falsely support billing for physical therapy and chiropractic treatment that was not necessary;

c.    Billed for physical therapy and chiropractic treatment that was not medically necessary;

d.    Billed for physical therapy and chiropractic treatment that was excessive and that continued despite lack of efficacy only to increase charges to Liberty Mutual;

e.    Fraudulently double billed for a variety of physical therapy and chiropractic modalities; and

f.    Charged unreasonable and excessive amounts for purported services that far exceeded reasonable and customary charges.

238.    As detailed *supra*, the defendants frequently violated standards of care, billed excessively, and billed for services without basis or adequate substantiation.

239.   If services were not required for a patient's care, recovery, or rehabilitation, such services were not medically necessary.

240.   The foregoing facts – billing for services not rendered and billing for medically unnecessary and excessive treatment – were not, and could not have been, known to Liberty Mutual until it commenced its investigation of the defendants shortly before the filing of this action.

241.   The prevalence of such facts and the defendants' failure to abide by accepted standards of care render the defendants' charges unnecessary and unlawful.

242.   The fact of unnecessary and unlawful claims is present with respect to every patient at issue in this Complaint, including those specific patient examples set out above and in the charts annexed at Exhibits 1 and 2.

243.   Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act mailed and faxed to Liberty Mutual by the defendants constitutes a misrepresentation because the services were not lawful, medically necessary, and actually provided as they must be in order to be compensable under Michigan law.

244.   Through the submission of patient records, invoices, and other medical documentation to Liberty Mutual via the U.S. Mail and interstate wires, the defendants attested to the fact and medical necessity of the treatment for which they billed Liberty Mutual.

245. As the defendants did not provide actual and reasonably necessary treatment, and misrepresented the treatment actually delivered, each bill and accompanying documentation mailed and faxed by the defendants to Liberty Mutual constitutes a material misrepresentation.

## B.  LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

246. The documents submitted to Liberty Mutual by the defendants were designed to, and did in fact, induce Liberty Mutual to rely on the documents.

247. At all relevant times, the defendants hid from Liberty Mutual facts regarding the fact and medical necessity of the treatment allegedly provided to prevent Liberty Mutual from discovering that the claims submitted by the defendants were not compensable under the No-Fault Act.

248. These misrepresentations included submitting false medical documentation regarding the fact, lawfulness, and necessity of treatment in order to seek payment under Michigan's No-Fault Act.

249. Due to the defendants' material misrepresentations and other affirmative acts designed to hide their fraudulent scheme, Liberty Mutual did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

250. As a result of the defendants' misrepresentations, Liberty Mutual paid hundreds of thousands of dollars to the defendants.

251.  Liberty Mutual would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the treatment billed and if the defendants had not made false representations regarding their eligibility for payment under the Michigan No-Fault Act.

## XI.   MAIL AND WIRE FRAUD RACKETEERING ACTIVITY

252.  As alleged above, the treatment billed by the defendants was not provided, was not medically necessary, and was fraudulently billed.

253.  The objective of the scheme to defraud Liberty Mutual, which occurred throughout the period noted in Exhibits 1 through 3, was to collect No-Fault benefits to which the defendants were not entitled because the treatment billed was not provided, was not necessary, was fraudulently billed, and was billed at excessive and unreasonable amounts.

254.  This objective necessarily required the submission of bills for payment to Liberty Mutual.

255.  The defendants created, prepared, and submitted false medical documentation and placed in a post office or authorized depository for mail matter things to be sent and delivered by the United States Postal Service or sent faxes over interstate wires.

256.  All documents, medical records, prescriptions, notes, reports, bills, medical diagnoses, letters, correspondence, and requests for payment in connection

with the insurance claims referenced throughout this pleading traveled through the U.S. Mail or over interstate wires.

257.   All medical records and bills submitted through interstate wires by Infinity were faxed from the defendants in Michigan to Liberty Mutual in Georgia or California.

258.   Every automobile insurance claim detailed herein involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim and insurance payments.

259.   It was foreseeable to the defendants that submitting bills and medical records to Liberty Mutual would trigger mailings in furtherance of the scheme to defraud alleged herein, including actual payment of fraudulent bills via checks mailed by Liberty Mutual.

260.   Every payment at issue in this Complaint where Liberty Mutual was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Liberty Mutual using the U.S. Mail.

261.   The fraudulent medical billing scheme detailed herein generated numerous mailings and faxes.

262.   A chart highlighting representative examples of mail and wire fraud events by the defendants is annexed hereto at Exhibit 3.

263.   As detailed herein, the defendants also submitted medical documentation and claims for payment to Liberty Mutual via the U.S. Mail or fax related to each exemplar patient discussed in this Complaint.

264.   It was within the ordinary course of business for the defendants to submit claims for No-Fault payments to insurance carriers like Liberty Mutual through the U.S. Mail or fax.

265.   Moreover, the business of billing for treatment by each of the defendants at issue herein is regularly conducted by fraudulently seeking payment to which each defendant is not entitled through the use of fraudulent communications sent via the U.S. Mail or fax.

266.   In other words, discrete (claim- and patient-specific) instances of mail and wire fraud are a regular way of doing business for each of the defendants.

267.   The defendants continue to submit claims for payment to Liberty Mutual and, in some instances, continue to commence litigation against Liberty Mutual seeking to collect on unpaid claims.

268.   Thus, the defendants' commission of mail and wire fraud continues.

269.   As all of the defendants named herein agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Liberty Mutual by seeking payment for treatment that is not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

270. As several of the defendants named herein (those who operated the Infinity enterprise) agreed that they would use (and, in fact, did use) faxes over interstate wires in furtherance of their scheme to defraud Liberty Mutual by seeking payment for treatment that is not compensable under the Michigan No-Fault Act, these defendants committed wire fraud, as defined in 18 U.S.C. § 1343.

271. Liberty Mutual reasonably relied on the submissions it received from the defendants, including the representative submissions set out in Exhibits 1 through 3 annexed hereto and identified in the exemplar patients above.

272. As the defendants agreed to pursue the same criminal objective (namely, mail and wire fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Liberty Mutual's damages.

## XII.   DAMAGES

273. The fraudulent conduct by the defendants injured Liberty Mutual in its business and property by reason of the aforesaid violations of law.

274. Liberty Mutual's claim for compensatory damages includes payments made by Liberty Mutual directly to Infinity and Aligned (for the benefit and receipt of all of the defendants) in reliance upon and as a result of the defendants' false representations regarding the fact, lawfulness, and necessity of the treatment for which they directly billed Liberty Mutual.

275.    Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation, and Liberty Mutual's damages continue to accrue, Liberty Mutual has been induced to pay hundreds of thousands of dollars to and for the benefit of the defendants.

276.    Liberty Mutual's damages seek monies paid directly to the defendants or on their behalf by Liberty Mutual, and the damages are not derivative of an injury to any other person or entity.  The patients at issue in this Complaint were used as pawns by the defendants and have been victimized by the defendants.  However, the actual target of the defendants' scheme—and the sole party who received fraudulent mailings and faxes as itemized in the exemplar patients above and in Exhibits 1 through 3—is Liberty Mutual.  Liberty Mutual alone paid the damages at issue herein.  Thus, injury to Liberty Mutual was the intended, direct, and actual result of the defendants' scheme to defraud.  Injury to Liberty Mutual was also the reasonably probable consequence of the defendants' actions, as it was in the ordinary course of the defendants' business to collect insurance proceeds.

277.    The defendants' fraudulent conduct discussed above caused Liberty Mutual to incur damages by paying claims that otherwise would not have been paid but for the defendants' misrepresentations and improper conduct (as set out in the preceding sections).  Liberty Mutual was the target of the defendants' conduct and

bills, and Liberty Mutual's damages are directly related to and a consequence of the defendants' actions discussed herein.

278.   Liberty Mutual also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for claims mailed and faxed by the defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

279.   Liberty Mutual investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XIII.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Infinity Enterprise)
### Against Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.

280.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

281.   Infinity constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

282.   In connection with the claims identified in the within Complaint, defendants Aligned, Ahmed Zaki, and Khaled Zaki ("Count I defendants") intentionally caused to be prepared and mailed and faxed false medical

documentation by Infinity, or knew that such false medical documentation would be mailed and faxed in the ordinary course of Infinity's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Infinity would occur, in furtherance of the Count I defendants' scheme to defraud.

283.   The Count I defendants knew that two (2) or more mailings and faxes would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 3.

284.   As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for services that were billed by Infinity, which they knew would be billed by Infinity, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

285.   Ahmed Zaki owned, operated, and conducted Infinity and was responsible for all actions taken by Infinity and its representatives.

286.   Aligned and Khaled Zaki referred patients to Infinity so that Infinity could continue billing for physical therapy services it did not provide and medically unnecessary and excessive physical therapy services.

287.   The Count I defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

medical necessity and permitted Infinity to continue billing for medically unnecessary, excessive, and not actually rendered services.

288. As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Infinity for the benefit of the Count I defendants that would not otherwise have been paid.

289. The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

290. By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Infinity Enterprise)**
**Against Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.**

291. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

292.   Defendants Aligned, Ahmed Zaki, and Khaled Zaki ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Infinity.

293.   The Count II defendants each agreed to further, facilitate, support, and operate the Infinity enterprise.

294.   As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

295.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Infinity even though Infinity was not eligible to collect such payments by virtue of its unlawful conduct.

296.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim documents and medical record documents containing material misrepresentations.

297.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count II defendants' unlawful conduct described herein.

298.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Aligned Enterprise)
### Against Infinity Physical Therapy LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.

299.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

300.   Aligned constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

301.   In connection with the claims identified in the within Complaint, defendants Infinity, Ahmed Zaki, and Khaled Zaki ("Count III defendants") intentionally caused to be prepared and mailed false medical documentation by Aligned or knew that such false medical documentation would be mailed in the ordinary course of Aligned's business, or should have reasonably foreseen that the mailing of such false medical documentation by Aligned would occur, in furtherance of the Count III defendants' scheme to defraud.

302.    The Count III defendants knew that two (2) or more mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings identified in the chart annexed hereto at Exhibit 3.

303.    As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for treatment that they knew would be billed by Aligned, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

304.    Khaled Zaki owned, operated, and conducted Aligned and was responsible for all actions taken by Aligned and its representatives.

305.    Infinity and Ahmed Zaki referred patients to Aligned so that Aligned could continue billing for chiropractic treatment it did not provide and medically unnecessary and excessive chiropractic treatment.

306.    The Count III defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of medical necessity and permitted Aligned to continue billing for continue billing for medically unnecessary, excessive, and not actually rendered services.

307.    As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued

payment drafts to Aligned for the benefit of the Count III defendants that would not otherwise have been paid.

308.    The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

309.    By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Aligned Enterprise)**
**Against Infinity Physical Therapy LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.**

310.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

311.    Defendants Infinity, Ahmed Zaki, and Khaled Zaki ("Count IV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Aligned.

312.    The Count IV defendants each agreed to further, facilitate, support, and operate the Aligned enterprise.

313.   As such, the Count IV defendants conspired to violate 18 U.S.C. § 1962(c).

314.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Aligned even though Aligned was not eligible to collect such payments by virtue of its unlawful conduct.

315.   The Count IV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim documents and medical record documents containing material misrepresentations.

316.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count IV defendants' unlawful conduct described herein.

317.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>**COUNT V**</u>
**COMMON LAW FRAUD**
**Against All Defendants**

318.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

319.   The scheme to defraud perpetrated by Infinity, Aligned, Ahmed Zaki, and Khaled Zaki ("Count V defendants") was dependent upon a succession of material misrepresentations of fact that the defendants were entitled to payment pursuant to applicable provisions of the Michigan No-Fault Act.

320.   The misrepresentations of fact made by the Count V defendants include those material misrepresentations set out in section X.A, *supra*.

321.   The Count V defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

322.   The misrepresentations were intentionally made by the Count V defendants in furtherance of their scheme to defraud Liberty Mutual by submitting, causing to be submitted, or knowing that non-compensable claims for payment pursuant to applicable provisions of the Michigan No-Fault Act would be submitted to Liberty Mutual.

323.   The Count V defendants' misrepresentations were known to be false and were made for the purpose of inducing Liberty Mutual to make payments for claims that are not compensable under Michigan law.

324. Liberty Mutual reasonably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

325. As a direct and proximate result of the defendants' fraudulent representations and acts, Liberty Mutual has been damaged in its business and property as previously described herein.

## COUNT VI
## CIVIL CONSPIRACY
### Against All Defendants

326. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

327. Defendants Infinity, Aligned, Ahmed Zaki, and Khaled Zaki ("Count VI defendants") combined and acted in concert to accomplish the unlawful purpose of defrauding Liberty Mutual by submitting claims for payment pursuant to applicable provisions of the Michigan No-Fault Act to which they were not entitled because (1) the defendants did not actually provide the services for which claims were submitted, (2) the defendants did not provide reasonably necessary services, (3) the defendants engaged in fraudulent billing practices, and (4) the defendants charged excessive amounts.

328.   The Count VI defendants worked together to achieve an unlawful purpose (namely, defrauding Liberty Mutual for personal gain).

329.   This purpose was known to all of the Count VI defendants and intentionally pursued.

330.   Despite knowing that the defendants were not entitled to payment pursuant to applicable provisions of the Michigan No-Fault Act because they billed for services that were not actually provided, because they billed for medically unnecessary and excessive services, because they engaged in fraudulent billing practices, and because they charged unreasonable amounts, the Count VI defendants nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Liberty Mutual seeking payment.

331.   As a result of the false medical documentation submitted by the defendants, Liberty Mutual paid certain of the claims submitted.

332.   All of the Count VI defendants directly benefited from the payments made to Infinity and Aligned.

333.   All of the Count VI defendants actively and intentionally partook in a scheme to defraud Liberty Mutual and also encouraged and aided other Count VI defendants in the commission of acts done for the benefit of all Count VI defendants and to the unjustified detriment of Liberty Mutual.

334.  Accordingly, all of the Count VI defendants are equally liable for the fraud perpetrated on Liberty Mutual pursuant to their conspiracy.

## COUNT VII
## PAYMENT UNDER MISTAKE OF FACT
### Against Infinity Physical Therapy LLC and Aligned Chiropractic, LLC

335.  Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 above as if fully set forth herein.

336.  Liberty Mutual paid the amounts described herein under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Liberty Mutual by misrepresenting the fact and medical necessity of the services billed by Infinity and Aligned ("Count VII defendants").

337.  Liberty Mutual sustained damages by paying under a mistake of fact the claims submitted by the Count VII defendants, which misrepresented the fact, lawfulness, reasonableness, and necessity of the services allegedly provided.

338.  The Count VII defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Liberty Mutual under a mistake of fact.

339.  Liberty Mutual is entitled to restitution from each of the Count VII defendants, individually and jointly, for all monies paid to and/or received by them from Liberty Mutual.

340.   The Count VII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

### COUNT VIII
### UNJUST ENRICHMENT
### Against All Defendants

341.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

342.   Defendants Infinity, Aligned, Ahmed Zaki, and Khaled Zaki ("Count VIII defendants") submitted, caused to be submitted, or benefited from claims submitted to Liberty Mutual that caused Liberty Mutual to pay money, in reasonable belief that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations.

343.   Liberty Mutual's payments constitute a benefit that the Count VIII defendants aggressively sought and voluntarily accepted.

344.   The Count VIII defendants wrongfully obtained and benefited from payments from Liberty Mutual through the fraudulent scheme detailed herein.

345.   The Count VIII defendants have been unjustly enriched by receipt of and benefit from these wrongfully obtained payments from Liberty Mutual.

346.   The Count VIII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT IX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

347.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 279 set forth above as if fully set forth herein.

348.   Defendants Infinity, Aligned, Ahmed Zaki, and Khaled Zaki ("Count IX defendants") routinely billed for unnecessary and excessive services with respect to the patients at issue in this Complaint.

349.   The Count IX defendants also billed for services that were never provided.

350.   Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for lawful, reasonable, and necessary medical expenses arising out of a motor vehicle accident.   Mich. Comp. Laws §§ 500.3105, 500.3107, and 500.3157(1).

351.   The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident.   Mich. Comp. Laws § 500.3107.

352.   Where a provider is unable to show that an expense has been actually incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

353. The Count IX defendants continue to submit claims under applicable provisions of the Michigan No-Fault Act for unnecessary, unlawful, and not actually provided services to Liberty Mutual, and other claims remain pending with Liberty Mutual.

354. The Count IX defendants will continue to submit claims under applicable provisions of the Michigan No-Fault Act absent a declaration by this Court that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by any of the Count IX defendants for any or all of the reasons set out in the within Complaint.

355. Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants billed for unnecessary, unlawful, and not actually provided services that are not compensable under applicable provisions of the Michigan No-Fault Act.

356. Liberty Mutual also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants were engaged in a scheme whereby they billed for unnecessary services and submitted unreasonable charges for the same to Liberty Mutual at all relevant times.

357. As such, the Count IX defendants have no standing to submit, pursue, or receive benefits or any other payment from Liberty Mutual, and Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,

declaring that the Count IX defendants cannot seek payment from Liberty Mutual for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the within Complaint.

358.   Liberty Mutual further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the conduct detailed in the within Complaint.

## XIV.  DEMAND FOR RELIEF

WHEREFORE, plaintiffs Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, LM General Insurance Company, American Economy Insurance Company, and Safeco Insurance Company of Illinois respectfully pray that judgment enter in their favor as follows:

**COUNT I**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Infinity Enterprise)**
**Against Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.**

(a)   AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

### COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Infinity Enterprise)
### Against Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

### COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Aligned Enterprise)
### Against Infinity Physical Therapy LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Aligned Enterprise)
### Against Infinity Physical Therapy LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT V
### COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)    AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)    GRANT all other relief this Court deems just.

## COUNT VI
## CIVIL CONSPIRACY
### Against All Defendants

(a)    AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)    AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)    GRANT all other relief this Court deems just.

## COUNT VII
## PAYMENT UNDER MISTAKE OF FACT
### Against Infinity Physical Therapy LLC and Aligned Chiropractic, LLC

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)    GRANT all other relief this Court deems just.

## COUNT VIII
## UNJUST ENRICHMENT
### Against All Defendants

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)    GRANT all other relief this Court deems just.

## COUNT IX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
## Against All Defendants

(a)     DECLARE that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by defendants Infinity Physical Therapy LLC, Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C., jointly and severally, for any or all of the reasons set out in the within Complaint;

(b)     DECLARE that Infinity Physical Therapy LLC, Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C., jointly and severally, cannot seek payment from Liberty Mutual pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the within Complaint;

(c)     DECLARE that Infinity Physical Therapy LLC, Aligned Chiropractic, LLC, Ahmed Zaki, P.T., and Khaled Zaki, D.C., jointly and severally, cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the conduct detailed in the within Complaint; and

(d)     GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XV. <u>**DEMAND FOR JURY TRIAL**</u>

The plaintiffs hereby demand a trial by jury on all claims.

      Respectfully submitted,

      KTM

      */s/ Andrew H. DeNinno*

      _____
      Nathan A. Tilden (P76969)
      ntilden@ktmpc.com
      Andrew H. DeNinno
      adeninno@ktmpc.com
      Brian M. Epstein
      bepstein@ktmpc.com
      38777 Six Mile Road, Suite 314
      Livonia, MI 48152
      (734) 521-9000

      350 Granite Street, Suite 2204
      Braintree, MA 02184
      (617) 770-2214

Dated: April 24, 2024    *Attorneys for Plaintiffs*